## LOVERIN *v.* WALKER.

| 44 | 489 |
| 67 | 271 |

Where the plaintiff, owning a mill-seat, and the land and mills on each side of the stream, conveyed an undivided half of the land and mills on one side to the defendant Walker, and afterward conveyed the other half of that land, describing it, to another, " with one undivided half of the buildings thereon, with a privilege to draw the water from said saw-mill pond sufficient for one tub-wheel at all seasons of the year"; —

*Held*, that the grantee in the last mentioned deed took only an undivided half of the specified quantity of water ; —

*Held*, also, that the quantity must be governed by the amount required to propel the tub-wheel before used to run the mill, although, at the time of the conveyance, the wheel had been carried away by a freshet, and had not then been restored.

THIS is an action on the case against Wm. B. Walker, Edward Dow and Gilbert P. Hill, for diverting water from the plaintiff's mill—the said Dow and Hill claiming under the other defendant, Walker.

The facts are sufficiently set forth in the opinion of the court. The case was opened for trial by the jury, and was reserved upon the facts disclosed, to obtain a construction of the deeds.

*Morrison, Stanley & Clark*, for the plaintiff.

*George Y. Sawyer*, for the defendants.

BELLOWS, J. It appears from the case that Loverin, being the owner of the whole water-power, and the land and mills on both sides of the stream, on March 20, 1841, conveyed one undivided half of the land and mill on the east side to the defendant Walker, and afterward, October 1, 1849, conveyed the other half of the same land and mill to J. C. Walker and William B. Walker, jr., sons of the defendant Walker, " with a privilege to draw the water from the said saw-mill pond sufficient for one tub-wheel at all seasons of the year."

At a subsequent time the title thus acquired by Wm. B. Walker, jr., became vested in J. C. Walker, who, on December 20, 1855, conveyed all his right to the defendant Walker, to the grantee's use during his life, after the decease of the grantor, and then to the use of the grantor's mother-in-law and her heirs for ever.

The case then is this: That Loverin, owning the whole water power and land and mills on each side of the stream, conveys an undivided half of the land, mills and water power on the east side, and then afterward conveys the other undivided half of the land and mills on that side, with the right of water sufficient for one tub-wheel; it appearing from the evidence that the mills on that side were operated by a tub-wheel, although it had a year or more before been swept away by a freshet, and had not at the time of this conveyance been replaced.

Had the deed conveyed one undivided half of the land and mills, with the water-power attached, it could not reasonably have been claimed that the water-power attached to the whole land was conveyed, but only the one undivided half.

Nor do we think that the case is changed by the fact that the quantity of water was attempted to be fixed; but we think that the intent of the parties still was to convey only an undivided half of that quantity, to correspond with the interest in the land and mill.

That the parties should choose to define the extent of the water right, instead of conveying an undivided fourth part of the whole, does not, we think, affect the construction of the deed on the point in question; nor is there any thing in the language of the instrument that necessarily implies a purpose to grant a power sufficient to operate those mills, independent of the one fourth part of the whole power before granted to the defendant, and which was already appurtenant to the same mills. To justify such a construction the terms of the grant ought to be much more explicit than any we find in it; especially when its general purpose is to grant an undivided half of the property.

So far as we are aided by any adjudged cases to which our attention has been turned, they are all in the direction of the views we have indicated. Where a person, seized of three undivided fourth parts of a farm, conveyed an equal moity of it, " together with [all the estate, right, title, &c., which he, the grantor, hath to the above described premises," it was held that these general words were not to be construed as extending the grant beyond the one moiety of the premises; and the court say it would be doing violence to the deed, and to the intention of the parties, to say that it was meant to convey the whole farm; *Jackson* v. *Stevens*, 16 Johns. 110; and yet the clause in question there was in terms broad enough to embrace the whole. In *DeWitt* v. *Harvey*, 4 Gray 486, Shipley and Woods, two of three tenants in common, owned seven eighths of a tract of land and water-power; Shipley and Woods together owning six eighths, and Woods alone one eighth. In June, 1836, they made a division of a portion of the tract, allotting to each of the two a portion to hold in severalty, and each released to the other his interest in the other's tract, including three eighths of the whole water-power, for the use of the mills thereon — thus giving to each six eighths of the tract assigned to him, and three eighths of the whole of the water power. On the same day Woods conveyed to W. and R. one eighth of another piece of land, with one undivided eighth part of the water of the whole river; reserving out of the grant the water-power conveyed by said Shipley and Woods, each to the other, as aforesaid; and at the same time Shipley and Woods conveyed to W. and R. another piece of land, for the purpose of erecting a paper-mill thereon, " with the privilege of drawing and using one eighth of the water."

The court held that this could not be regarded as conveying an additional right of water to what had been conveyed by Woods, consistently with the other conveyances; it being apparent that the purpose was to assign to each of the two tenants three eighths, and one eighth to W. and R.; although each deed to W. and R. in terms conveys one eighth. See also *Irwin* v. *United States*, 16 How. 513.

In the case before us the defendant claims the true construction

to be such as to convey water for one tub-wheel over and above the portion before granted; and the question really seems to be, whether the grant was of the whole or only one half of such a right. Had the grantor retained the other undivided half of the mill and land, it would surely be unreasonable to suppose that he would have conferred upon his grantee power sufficient to operate the mill the whole time, when his right to use the mill extended to only one half the time, and especially when, by so doing, the grantor might deprive himself of all right to run his own half of the mill.

By the conveyance of an undivided half of the mill, and of water sufficient to run one tub-wheel, the grantee acquired a right to run the mill one half the time, and during that half of the time to use the specified quantity of water; and this is all he could ask or expect, leaving the owner of the other half to make his own arrangements about the quantity of water he should use. At the time of the grant in question to J. C. Walker and Wm. B. Walker, jr., the other half of the mill had been conveyed to another person (the defendant Walker), and was thus held by him, and there is nothing that goes to show any intent to increase the water-power then held by the defendant.

It is true that these grantees and the defendant might elect to run the mill jointly, instead of dividing the time, as is extensively practiced; but in that case they would be limited to one fourth part of the water half of the time, and the specified quantity the other half, and in this way we think the intention of the parties would be carried out.

The remaining question is, whether the right of water for a tub-wheel shall be limited to such an one as was used before, or in any other way; or whether the grantee acquired by the deed a right to water for a tub-wheel of any capacity, even to the absorbing of the whole power. It is to be assumed from the case that there were water mills on both sides of the stream at the time of Loverin's conveyance to J. C. and Wm. B. Walker; that the mills on the east side had been worked by a tub-wheel, which had been carried away a year or more before by a freshet, and not replaced. Under these circumstances we think it might well be regarded as standing upon the same footing as if the wheel was still in use at the mill from which it had been accidentally and temporarily removed.

This being the case we are of the opinion that the grantee would be limited to the use of so much water as would be sufficient for a tub wheel of the capacity of the old one, although not restricted in the use of that quantity to this particular kind of wheel. Unless such limitation is adopted it is difficult to perceive any bounds to the grantee's right, short of the utmost capacity of the entire brook; and this we think can not have been the intention of the parties. Could the language of the deed be regarded as doubtful the court might be aided by the practical construction given it by the parties; and this, as it appears, would tend to the same conclusion we have reached without such aid. See *Irwin* v. *United States*, 16 How. 513.

*Let the case be discharged for further proceedings.*